IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

THE AUSTIN CHRONICLE CORPORATION, §
§
Plaintiff, §
§
v. §     Case No. ___1:24-cv-00717___
§
THE HANOVER CASUALTY COMPANY, §
§
Defendant. §

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff The Austin Chronicle Corporation ("the Chronicle") brings this action against Defendant The Hanover Casualty Company ("Hanover") and would respectfully show:

**I.      Nature of this action.**

1.      This is a liability insurance coverage case.  Hanover is wrongly refusing to provide its insured, the Chronicle, with a defense and indemnification in a lawsuit, *Ariel Cassone v. Louis Black and The Austin Chronicle Corporation*, No. 1:23-CV-01197-RP (W.D. Tex.) ("The *Cassone* Lawsuit").  The *Cassone* Lawsuit alleges claims that trigger Hanover's duty to defend the Chronicle and which, if proven and damages assessed, would require Hanover to indemnify the Chronicle up to policy limits.

2.      The Chronicle seeks a declaration that Hanover has a duty to defend and indemnify the Chronicle in The *Cassone* Lawsuit, and a judgment awarding the Chronicle the defense costs it has incurred in that case, plus actual and treble damages, prejudgment interest, attorney's fees incurred in this lawsuit, and court costs.

## II.     Parties.

3.      Plaintiff The Austin Chronicle Corporation is a Texas company with its principal place of business in Austin, Texas.

4.      Defendant The Hanover Casualty Company is a corporation formed under Massachusetts law with its principal place of business in Worcester, Massachusetts.  It may be served by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-4284.

## III.    Jurisdiction and venue.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and because the amount in controversy exceeds $75,000.

6.      This Court has jurisdiction to declare the parties rights and obligations pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Hanover is subject to personal jurisdiction in Texas because it has established minimum contacts with Texas by purposefully availing itself of the benefits and protections of Texas law by selling insurance policies to Texas companies, including the Chronicle, that are to be performed in whole or in part within Texas, and by failing to perform the contractual, statutory, and common law duties it owes to the Chronicle in Texas.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Austin Division of the Western District of Texas.

IV.     **The facts.**

    A.     **The Chronicle bought liability insurance from Hanover to cover claims asserted against it between August 6, 2023, and August 6, 2024.**

    9.     The Chronicle is a local company that has published a highly regarded independent alternative newspaper, *The Austin Chronicle*, since 1981.

    10.     Hanover is an insurance company that sells, among other things, liability insurance policies in Texas.

    11.     The Chronicle has bought insurance from Hanover for many years.  Effective June 5, 2023, the Chronicle renewed its insurance policies with Hanover for a total premium, paid in advance, of $17,114.00.  In exchange for that premium, Hanover issued the Chronicle its Avenues Businessowners Insurance Policy No. OLD-A997819-07 ("the Policy").  Ex. 1, attached.  The Policy's period runs from August 6, 2023, to August 6, 2024.  *Id*. at 14.

    12.     The Policy provides for different types of coverage.  Three are at issue.

    13.     First, the Policy provides the Chronicle $1,000,000 per occurrence and $2,000,000 aggregate coverage for "**Businessowners Liability**."  Ex. 1 at 14.  Subject to certain exclusions, this coverage provides

    **a.**     We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply.  …

    **b.**     This insurance applies:

        **(1)**     To "bodily injury" or "property damage" only if:

            **(a)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; …

*Id*. at 90.  The relevant definitions follow:

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged.

*Id*. at 107.

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury."

*Id*. at 104.

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**    False arrest, detention, or imprisonment;

*Id*. at 106.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Id*.

14.    The Chronicle also purchased a $250,000 "**Employment Practices Liability Insurance Coverage Endorsement**." Ex. 1 at 27. Subject to certain exclusions, this coverage provides

"We" shall pay those "losses" arising out of "your" "wrongful employment act" against "your" "employees", to which this insurance applies. The "wrongful employment act" must commence or take place after the "original inception date", but before the end of the "EPL coverage period". A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or any Extended Reporting Period (if applicable) and reported to "us" pursuant to the terms of this EPL Endorsement.

…

"We" have the right and duty to defend and appoint an attorney to defend any "claim" or "suit" brought against any "insured" for a "wrongful employment act" to which this insurance applies, even if the "claim or "suit" is groundless or fraudulent.

*Id*. at 176.

Plaintiff's Original Complaint – Page 4

15.     Finally, the Chronicle purchased Hanover's "**Commercial Liability Umbrella Coverage**." Ex. 1 at 30.  Subject to certain exclusions, this coverage provides

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.  When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

*Id*. at 208.

### B.     Ariel Cassone sued Louis Black and the Chronicle in October 2023.

16.     Ariel Cassone filed her Original Complaint in The *Cassone* Lawsuit against Louis Black and The Austin Chronicle Corporation on October 3, 2023.  Ex. 2, attached.

17.     Ms. Cassone's Original Complaint alleged that Louis Black, a founder and former editor of the Chronicle, subjected her to "years of consistent harassment and abuse," and that he "used his power and influence to coerce [her] into a state of sexual servitude under the guise of 'mentorship' at the expense of [her] well-being and her financial and professional autonomy." Ex. 1 ¶ 4.  She alleged that the Chronicle was "aware or willfully ignorant of the fact that [it] benefitted from Ms. Cassone's forced labor and from the working relationship in which she was coerced to engage in commercial sex acts for Mr. Black." *Id*. ¶¶ 9, 32.  She alleged claims against Mr. Black of Assault-Threat of Bodily Injury, Assault-Infliction of Bodily Injury, Offensive Physical Contact, Intentional Infliction of Emotional Distress, Breach of Contract, and Fraudulent Inducement.  *Id*. ¶¶ 37-59.  She alleged claims of Forced Labor under Texas law and Labor Trafficking and Sex Trafficking under federal law against both Mr. Black and the Chronicle.  *Id*.

¶¶ 60-71.  She sought actual, compensatory, punitive, pre- and post-judgment interest, attorneys' fees and costs from both Mr. Black and the Chronicle.  *Id*. at 19 ¶¶ A-E.

18.     After the Chronicle moved to dismiss her claims against it, Ms. Cassone filed a First Amended Complaint.  Ex. 3, attached.  She repeated the factual allegations in her Original Complaint, and she added allegations that Mr. Black had treated other, unnamed, women similarly, and that the Chronicle's employees "concealed or turned a blind eye to the pattern of abuse Mr. Black engaged in for years … ."  *Id*.  ¶ 56.  She alleged the same six causes of action against Mr. Black only, *id*. ¶¶ 59-81, and the same three trafficking claims against both Mr. Black and the Chronicle.  *Id*. ¶¶ 82-95.  Her First Amended Complaint sought the same damages, interest, attorneys' fees, and costs as her Original Complaint.  *Id*. at 19 ¶¶ A-E.

19.     After the Court dismissed Ms. Cassone's claims against the Chronicle, she moved for leave to amend her complaint again and filed a Proposed Second Amended Complaint.  Ex. 4, attached.  Her proposed complaint adds allegations that the Chronicle paid her "in or around 2016" to work at a "four-day international symposium" hosted by the Chronicle in Austin, Texas, and that the Chronicle knew Mr. Black "was misspending company funds" to pay for hotel rooms where he allegedly assaulted Mr. Cassone and other, unnamed women.  *Id*. ¶¶ 47-48, 58-61.  Ms. Cassone still did not allege any specific facts indicating that the Chronicle knew of Mr. Black's conduct, and she continued to allege in the alternative that the Chronicle either knew or should have known of his alleged abuse.  *Id*. ¶ 60.

20.     Ms. Cassone's motion for leave to file her Proposed Second Amended Complaint is currently pending before this Court.  *See* Doc. 31, *Cassone v. Black*, No. 1:23-cv-01197-RP.

C.     **Hanover refused the Chronicle coverage under its Businessowners Liability and Commercial Liability Umbrella Coverage.**

21.     Promptly after The *Cassone* Lawsuit was filed, the Chronicle tendered the Original Complaint to Hanover.  By letter dated November 16, 2022, Hanover denied that it had a duty to defend or indemnify the Chronicle under the Policy's **Businessowners Liability** or **Commercial Liability Umbrella Coverage**.  *See* Ex. 5 at 4-5.  Hanover ignored the Policy's **Employment Practices Liability Insurance Coverage Endorsement**.  *Id.*

22.     Hanover's denial letter opened by stating that

> there is no coverage under the policies issued by Hanover to ACC [The Austin Chronicle Corporation].  Specifically, ***there is no coverage for intentional acts and the allegations in the Complaint don't meet the definition of an occurrence under the policies.***

Ex. 5 at 1 (emphasis added).

23.     Hanover then purported to summarize The *Cassone* Lawsuit's allegations in a single paragraph:

> The Plaintiff Ariel Cassone filed an action for damages and other legal equitable relief against Louis [B]lack and ACC.  The Complaint alleges that ACC was aware or willfully ignorant of the fact that it benefited from Plaintiff's forced labor and from the working relationship in which she was required to engage in commercial sex acts for Mr. Black.  Plaintiff alleges her salary was funded by ACC.  ***Ms. Cassone seeks damages from Defendants for assault; intentional infliction of emotional distress; breach of contract***; forced labor in violation of Texas law; violations of the Trafficking Victims Protection Reauthorization Act and any other cause(s) of action that can be inferred from the facts set forth in the Complaint.

Ex. 5 at 1 (emphasis added).

24.     Hanover next recited a number of provisions from the Policy, Ex. 5 at 2-4, and then, in a single paragraph, stated its reason for denying coverage:

> Based on the allegations of the complaint and the relevant policy language it is the position of Hanover that coverage under the policy has not been triggered and that one or more policy exclusions apply.  ***Ariel Cassone's claims against Louis Black and ACC are all intentional acts.  Both insurance policies explicitly and unambiguously exclude coverage of claims resulting from bodily injury that are the result of an intentional act by an***

***insurer.*** Plaintiff states ACC was aware or willfully ignorant of the fact that it benefited from Plaintiff's forced labor and from the working relationship in which she was required to engage in commercial sex acts for Mr. Black. ***Plaintiff alleges that Mr. Black and ACC's acts were intentional, thereby causing the injury. Therefore coverage has not been triggered because the exclusion for expected or intended injury applies to your alleged actions under both policies.***

*Id*. at 4 (emphasis added).

25.     Hanover's denial letter was riddled with errors, was internally inconsistent, and misrepresented the Policy's terms.

26.     Hannover's assertion that Ms. Cassone seeks "damages from ***Defendants***" for assault, intentional infliction of emotional distress, and breach of contract, *see* Ex. 5 at 1 (emphasis added), was wrong.  Ms. Cassone has alleged those intentional tort and contract claims ***against Mr. Black only***.  *See* Ex. 2 ¶¶ 37-53; Ex. 3 ¶¶ 59-75; Ex. 4 ¶¶ 65-81.[1]  The *Cassone* Lawsuit alleges only state and federal trafficking beneficiary claims against the Chronicle.  *See* Ex. 2 ¶¶ 60-70; Ex. 3 ¶¶ 82-94; Ex. 4 ¶¶ 88-100.

27.     Hanover's assertion that "Ariel Cassone's claims against … ACC are all intentional acts," Ex. 5 at 4, was also wrong.  The *Cassone* Lawsuit does not allege that the Chronicle committed any abuse, intentional or otherwise.  It claims only that the Chronicle allegedly "***benefited*** from Ms. Cassone's forced labor, and from the professional relationship in which she was required to engage in commercial sex acts for Mr. Black." Ex. 2 ¶ 32 (emphasis added).  *See also* Ex. 3 ¶ 45; Ex. 4 ¶ 46.  As to the Chronicle's state of mind, Ms. Cassone does not allege the Chronicle acted intentionally, only that it ***knew or should have known*** that it was benefiting passively from Mr. Black's alleged abuse; she does not even allege that the Chronicle necessarily

---

[1] Hanover's summary of the lawsuit's claims was so perfunctory that it overlooked an entire cause of action, Fraudulent Inducement.  *See* Ex. 5 at 1.  That intentional tort, like the others, is alleged against Mr. Black only, not the Chronicle.  *See* Ex. 2 ¶¶ 54-59; Ex. 3 ¶¶ 76-81; Ex. 4 ¶¶ 82-87.

*knew* of the alleged abuse, let alone ***intentionally*** committed it. *Id.* Hanover's misreading of The *Cassone* Lawsuit's allegations against the Chronicle led it to wrongly deny coverage.

28. The federal ***criminal*** labor and sex trafficking statutes on which Ms. Cassone bases her claims against Mr. Black require intentional conduct to convict. *See* 18 U.S.C. § 1589(a); 18 U.S.C. § 1591(a). However, the statute that provides trafficking victims a ***civil remedy*** against alleged beneficiaries of their trafficking does not. Rather, it is sufficient to show that the alleged beneficiary – here, the Chronicle – "***knew or should have known***" that it was benefitting from participating in a venture that trafficked the plaintiff. 18 U.S.C. § 1595(a). To state a trafficking beneficiary claim, a victim does not need to allege that the beneficiary even ***knew*** of their trafficking, let alone committed intentional wrongful conduct:

> To state a claim under a § 1595 financial beneficiary theory, Plaintiff must allege facts from which it can be reasonably inferred that [] Defendants (1) "knowingly benefit[ted] financially or by receiving anything of value," (2) from participating in a venture, (3) they "***knew or should have known has engaged in***" sex trafficking under § 1591.

*E.S. v. Best Western Intern., Inc.*, 510 F. Supp. 3d 420, 426 (N.D. Tex. 2021) (citing *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-0155, 2020 WL 631870, at *4 (N.D. Cal. Oct 28, 2020)) (emphasis added).[2] As one federal court observed when holding that a trafficking beneficiary claim fell within the scope of liability insurance coverage:

> [I]t is possible for a defendant to be civilly liable without having violated any of the criminal portions of the TVPA, ***because the statute permits recovery under a civil standard even in the absence of proof of intentional conduct***.

*Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 194 (D. Mass. 2019) (emphasis added).[3]

---

[2] *See also, e.g., Harris v. Henry*, No. 1:22-cv-00366-LY, 2022 WL 16825200, at *7 (W.D. Tex. Nov. 7, 2022), *approved*, 2023 WL 3035423 (Jan. 11, 2023) (beneficiary claim required plaintiff to allege that defendant "***knew or should have known***" that [co-defendant] was engaged in the alleged sex trafficking of Plaintiff") (emphasis added).

[3] As a commentator has noted, "a civil action against the 'passive sex trafficker' might trigger at least a duty to defend because the statutory language requires only that this type of trafficker

29.     Hence, the key factor on which Hanover based its denial of coverage – that "Arial Cassone's claims against … ACC are all intentional acts" – was simply incorrect.  Ms. Cassone's federal trafficking beneficiary claims against the Chronicle do not allege (and do not need to allege) that the Chronicle intentionally abused her, nor do they allege (or need to allege) that the Chronicle **knew** about her alleged abuse, only that it **knew or should have known**.  *See* 18 U.S.C. § 1591(a).

30.     Indeed, Hanover knows that The *Cassone* Lawsuit is not based solely on allegations of intentional conduct by the Chronicle.  Contradicting its claim that "all" of Ms. Cassone's claims are based on the Chronicle's alleged "intentional acts," Hanover's denial letter expressly recognized that Ms. Cassone alleged the Chronicle "was aware of *or willfully ignorant of*" Mr. Black's alleged labor and sex trafficking.  Ex. 5 at 1 (emphasis added).  Therefore, even assuming the Policy "explicitly and unambiguously exclude[s] coverage of claims resulting from bodily injury that are the result of an intentional action by an insured," Hanover wrongly refused to defend the Chronicle because at least one claim – that the Chronicle should have known of her abuse – potentially fell within coverage.  *E.g.*, *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1492 (5th Cir. 1992) ("If any allegation in the complaint is even potentially covered by the policy then the insurer has a duty to defend its insured.").

31.     But Hanover did not just mischaracterize the The *Cassone* Lawsuit.  It also

---

'knowingly' benefits, financially or by receiving something of value, from participating in a venture which that trafficker 'knew or should have known was engaged in sex trafficking.'  The 'should have known' alternative situation can be viewed as presenting a potential for an 'accident,' injury, or damage that was not expected or intended, and false imprison[ment] which the 'passive sex trafficker' did not 'know' was violating rights and inflicting injury."  Eldon S. Edson, *Sex Trafficking Victims' Statutory Claims for Damages:  What Are They?  Could liability Insurance Apply?*, New Appleman on Insurance:  Current Critical Issues in Insurance Law (Spring 2020) at 43.

misstated the terms of its own Policy.

32.     Contrary to Hanover's assertion, the Policy does ***not*** "explicitly and unambiguously" exclude all claims based on "an intentional act by an insured." Ex. 5 at 4. The Policy contains no such language. Hanover apparently drew this inaccurate conclusion from the Policy's definition of an "occurrence" that triggers covered, and on three exclusions. *See* Ex. 5 at 2-4. However, under well-established Texas law, Ms. Cassone's claim that the Chronicle "knew or should have known" of her abuse qualifies as a coverage-triggering "occurrence," and none of the cited Policy exclusions excuse Hanover from its duty to defend the Chronicle in The *Cassone* Lawsuit.

33.     First, Hanover's claim that "the allegations in the Complaint don't meet the definition of an occurrence" and thus do not trigger coverage, Ex. 5 at 1, is wrong.

34.     The Policy uses the typical definition of "occurrence" in a commercial general liability ("CGL") policy:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Ex. 1 at 107. The Policy does not define "accident," but under Fifth Circuit and Texas cases, the terms "occurrence" and "accident" include damage that is the "unexpected, unforeseen or undesigned happening or consequence" of an insured's negligent behavior. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 724-25 (5th Cir. 1999).[4] The *Cassone* Lawsuit's claim that the Chronicle ***should have known*** of Mr. Black's alleged abuse is a claim of negligence. Therefore, The *Cassone* Lawsuit is a "suit" that alleges damages because of "bodily injury" caused

---

[4] "[A]n accident or occurrence is a happening that is unexpected and that occurs without intention or design." *Burlington Ins. v. Texas Krishnas, Inc.*, 143 S.W.3d 226, 231 (Tex. App. – Eastland 2004, no pet.) (finding duty to defend church against lawsuit alleging, in the alternative, that it either knew, or should have known, that its teachers had dangerous propensities).

by an "occurrence," as those terms are defined in the Policy, thereby triggering coverage.

35.     Hanover's denial letter referenced three exclusions that it contended took The *Cassone* Lawsuit out of coverage.  None of those exclusions apply.

36.     First, Hanover referenced the Policy's "**Expected or Intended Injury**" exclusion, claiming that "coverage has not been triggered because the exclusion for expected or intended injury applies to your alleged actions under both policies."  Ex. 5 at 4.  However, this exclusion is expressly limited to claims alleging "[b]odily injury' or 'property damage' ***expected or intended from the standpoint of the insured***."  *Id.* (emphasis added).  Ms. Cassone does not allege that the Chronicle "expected or intended" to inflict bodily injury on her.  She alleges only that the Chronicle benefitted from her alleged abuse by Mr. Black, and only that the Chronicle knew or should have known of that abuse; not that it "expected or intended" that abuse.  This exception, therefore, does not excuse Hanover from its duty to defend The *Cassone* Lawsuit.

37.     Second, without explaining how it applied, Hanover included the language of the Policy's **Knowing Violation of Rights of Another** exclusion in its denial letter.  *See* Ex. 5 at 2.  This exclusion, however, is expressly limited to claims "***caused by or at the direction of the insured with the knowledge that the act would violate the rights of another*** … .'"  *Id.* (emphasis added).  Ms. Cassone does not allege that her damages were "caused by or at the direction" of the Chronicle, nor does she allege that the Chronicle acted "with knowledge that the act would violate" her rights.  Ms. Cassone alleges only that the Chronicle ***knew or should have known*** that it benefitted from Mr. Black's alleged abuse.  This exception, therefore, does not excuse Hanover from its duty to defend the Chronicle.

38.     Finally, and again without explaining how it applied, Hanover's denial letter included the language of the **Criminal Acts** exclusion.  *See* Ex. 5 at 2, 4.  This exclusion, however,

is expressly limited to claims "***arising out of a criminal act committed by or at the direction of the insured***." *Id.* The *Cassone* Lawsuit does not allege that the Chronicle committed any criminal act, nor that Mr. Black's alleged abuse was committed "at the direction of" the Chronicle. This exclusion, therefore, does not excuse Hanover from its duty to defend.

39.     Hanover's denial letter appears to wrongly attribute the conduct of one named insured (Mr. Black) to another named insured (the Chronicle), contrary to Policy's express language and clearly established Texas law. Notably, Hanover's denial letter omitted the Policy's "**Separation of Insureds**" clause, which provides:

> **4.     Separation of Insureds**
>
> Except with respect to the Limits of Insurance under **SECTION II – LIABILITY**, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> **a.**     As if each Named Insured were the only Named Insured; and
>
> **b.**     Separately to each insured against whom claim is made or "suit" is brought.

Ex. 1 at 104. Under its own Policy, therefore, Hanover cannot deny the Chronicle a defense based on allegations made against Mr. Black.

40.     Moreover, the Texas Supreme Court, in construing materially identical policy language, held that "the insured's standpoint controls in determining whether there has been an 'occurrence' that triggers the duty to defend." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 188 (Tex. 2002). "[W]hether one who contributes to an injury is negligent is an inquiry independent from whether another who directly causes the injury acted intentionally." *Id.* at 191. Contrary to Hanover's position, "the actor's intent is not imputed to the insured in determining whether there was an occurrence" triggering coverage. *Id.* at 191-92. *See also Mid-Continent Cas. Co. v. JHP Development, Inc.*, No. Civ.A.SA04CA-192-XR, 2005 WL 1123759, at *4 (W.D. Tex. April 21, 2005) ("In *King*, the Texas Supreme Court concluded that it is 'the insured's standpoint [that]

controls in determining whether there has been an 'occurrence' …" *Id*. at 188).  Therefore, whether or not Ms. Cassone's allegations against Mr. Black are covered by the Policy is immaterial to the Chronicle's coverage.

41.     In sum, because The *Cassone* Lawsuit does not allege that Ms. Cassone's alleged injuries were "expected or intended from the standpoint of the" Chronicle; that they were "caused by or at the direction of the [Chronicle] with the knowledge that the act would violate" her rights; or that they "arose out of a criminal act committed by or at the direction of the insured," the exclusions do not excuse Hanover from its duty to defend the Chronicle.

**D.     Hanover ignored the Chronicle's response and refused a defense under the Policy's Employment Practices Liability Coverage Endorsement.**

42.     The Chronicle's counsel responded in detail to Hanover's declination letter on November 19, 2023.  Ex. 6, attached.  The Chronicle carefully explained (1) that Hanover had misidentified which claims Ms. Cassone alleged against the Chronicle; (2) that Ms. Cassone's claims against the Chronicle were not based solely on its allegedly intentional or criminal acts; and (3) that Hanover had misstated the scope of its Policy by claiming it excluded all claims alleging "intentional acts." *Id*. at 1-3.

43.     Hanover did not respond to the Chronicle's letter.

44.     The Chronicle sent Hanover a copy of Ms. Cassone's First Amended Complaint on December 11, 2023, the next business day after it was filed.  Ex. 7, attached.

45.     Hannover did not respond.

46.     Because Hanover's denial letter did not address the Policy's **Employment Practices Liability Coverage Endorsement ("EPL Coverage")**.  *See* Ex. 1 at 176-84.  The Chronicle's insurance broker, therefore, asked Hanover to provide its position as to that provision, which Hanover did by letter on March 6, 2024, again denying coverage.  *See* Ex. 8, attached.

47.    In this denial letter, Hanover provided a new, and contradictory, interpretation of The *Cassone* Lawsuit.  Rather than claim that Ms. Cassone alleged ***only*** "intentional acts" against the Chronicle, Hanover denied coverage by claiming that Ms. Cassone did not allege ***any*** intentional acts by the Chronicle:

> Ms. Cassone alleges that Mr. Black sexually assaulted her on several occasions over the years and alleges that Mr. Black improperly withheld her salary.  …  ***There are no allegations that ACC engaged directly in any of the acts or omissions, but only that it knowingly received a benefit from Ms. Cassone's uncompensated labor/services***.

Ex. 8 at 2 (emphasis added).  This time, Hanover correctly recognized that Ms. Cassone alleged intentional torts and breach of contract against Mr. Black only, not the Chronicle.  *Id*.  And this time, Hanover,  correctly recognized that The *Cassone* Lawsuit did not allege intentional conduct by the Chronicle:

> Further, Ms. Cassone does not allege that ACC committed a "wrongful employment act." While various acts or omissions by Mr. Black are alleged, ***the Lawsuit does not allege that ACC sexually harassed Ms. Cassone***.  …  Even in terms of the two causes of action that include ACC regarding forced labor and trafficking, ***Mr. Black is alleged to have engaged in the forced labor and trafficking, while ACC is alleged to have only received a benefit from such actions***.

*Id*. at 4 (emphasis added).  This is ***exactly*** what the Chronicle said in response to Hanover's initial denial letter.  *See* Ex. 6.

48.    In short, in order to deny coverage under the **Business Owners Liability Coverage** and **Umbrella Coverage**, Hanover characterized Ms. Cassone's allegations against the Chronicle as ***intentional***.  Then, to deny coverage under the **EPL Coverage**, Hanover recharacterized those same allegations as ***unintentional***.

49.    A telling sentence in Hanover's second denial letter confirms that it has not been following Texas law when deciding whether it has a duty to defend The *Cassone* Lawsuit. Although not asked to opine on whether the Policy provides Mr. Black coverage, Hanover

volunteered that "Mr. Black *likely does not qualify* as an 'insured' under the Policy for the conduct alleged." Ex. 8 at 4 (emphasis added). But "likely does not qualify" does not justify denying a defense. Under Texas law, if "*any* allegation in the complaint is *even potentially* covered by the policy then the insurer has a duty to defend its insured." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004) (quoting *Enserch Corp.*, 952 F.2d at 1492) (emphasis added by Court). Given Hanover's admission in its second denial letter that The *Cassone* Lawsuit does not allege intentionally wrongful acts by the Chronicle, it must provide the Chronicle a complete defense pursuant to its **Businessowners Liability Coverage**.

50.     In addition, Hanover must provide the Chronicle with a defense under its **EPL Coverage** because the two grounds it asserted for denying that coverage are likewise based on an incorrect reading of The *Cassone* Lawsuit and its Policy.

51.     Hanover's first reason for denying **EPL Coverage** was that "[t]here are no allegations in the First Amended Complaint that Ms. Cassone was an employee of ACC." Ex. 8 at 4. Hanover claims her allegations are consistent only with her being either a "visitor" or an "independent contractor." *Id.* While Ms. Cassone does not expressly allege she was a W-2 employee of the Chronicle, she also does not allege that she was a "visitor" or an "independent contractor." The Policy's definition of "employee" includes "any part-time, seasonal, and temporary 'employees." *Id.* at 3. The Cassone Lawsuit alleges that the Chronicle "benefited from Ms. Cassone's forced labor;" that her "salary was frequently paid from *The Austin Chronicle*'s PayPal account … as recently as 2021;" that she "assisted Mr. Black on projects for [] *The Chronicle*;" that the Chronicle "repeatedly financed Ms. Cassone's flight, hotel, and other travel expenses;" that she wrongly "never received professional credit for her … creative endeavors for *The Chronicle*;" that her salary sometimes came from "*The Austin Chronicle* directly;" that the

work she performed "was inextricably connected to [Mr. Black's] relationship with *The Austin Chronicle* and his contributions to that journal;" that she "frequently worked at *The Austin Chronicle* office in Austin, Texas;" and that "on several occasions, Mr. Cassone attended *Chronicle* meetings" during which Mr. Black "pitched Mr. Cassone's ideas." Ex. 3 ¶¶ 8, 9, 21, 34, 42, 44, 53. Ms. Cassone's Proposed Second Amended Complaint goes even further, alleging she "was paid by *The Chronicle* to work at the Association of Alternative Newsmedia's (ANN) four-day international symposium, the alternative news industry's largest gathering of the year, hosted by *The Chronicle* at the Westin Downtown." Ex. 4 ¶ 47. She claims she was "paid to serve as an event coordinator," that she answered questions by hotel staff for the Chronicle, and that she "directed *The Chronicle* in setting up symposium events and managing events once in progress." *Id*. ¶ 48.[5]

52.     These allegations are entirely consistent with Ms. Cassone being a "part-time, seasonal, or temporary" employee of the Chronicle, and thus her claims potentially fall within the Policy's definition of "employee. That is all that is needed under Texas law to trigger Hanover's duty to defend. *Ensersch Corp.*, 952 F.2d at 1492 ("If any allegation in the complaint is even potentially covered by the policy then the insurer has a duty to defend its insured.").

53.     Hanover's second reason for denying **EPL Coverage** was that "Ms. Cassone does not allege that ACC committed a 'wrongful employment act'" as defined in the Policy. Ex. 8 at

---

[5] The Chronicle denies these allegations, but as Hanover acknowledges, the truth or falsity of Ms. Cassone's claims is irrelevant to the question of coverage. *See* Ex. 5 at 1 ("Hanover recognizes that the allegations outlined below may be unsubstantiated and nothing in this letter is intended to suggest that the allegations have any legal or factual merit."); Ex. 6 at 1 ("Hanover recognizes that the Lawsuit allegations may be unsubstantiated and nothing in this letter is intended to suggest that the allegations have any legal or factual merit."). For the same reason, the Court's dismissal of Ms. Cassone's claims against the Chronicle under Rule 12(b)(6) does not excuse, after the fact, Hanover's breach of it duty to defend.

4.  But again, Ms. Cassone's allegations at least *potentially* allege such an act as to the Chronicle, given that the definition of "wrongful employment act" includes (1) "harassment," including "sexual harassment, whether quid pro quo, hostile work environment or otherwise;" (2) "discrimination … based on gender;" (3) employment-related "humiliation;" (4) "wrongful deprivation of career opportunity;" (5) "failure to provide or enforce adequate or consistent corporate policies and procedures relating any 'wrongful employment act;'" and (6) "negligent supervision … by an 'insured', relating to any of the above." *See* Ex. at 3-4.  Ms. Cassone's allegations potentially fall within the Policy's definition of "wrongful employment act," which is all that is needed to trigger Hanover's duty to defend under Texas law. *Ensench Corp.*, 952 F.2d at 1492.

54.     Hanover closed its file on the Chronicle's demand for a defense and indemnification in The *Cassone* Lawsuit on April 23, 2024.

55.     Because Hanover refused to provide a defense, the Chronicle was required to retain defense counsel at its own expense.  The Chronicle has incurred over $90,000 in attorneys' fees and costs in The *Cassone* Lawsuit to date, and it will continue to incur such fees and costs so long as that case remains pending.  The Chronicle also has been required to retain the undersigned counsel to bring this lawsuit to enforce its rights under the Policy and Texas law.

V.     **Claims.**

   A.     **Declaratory Judgment:  Duty to Defend and Indemnify.**

56.     The Chronicle incorporates all preceding allegations as if fully alleged herein.

57.     A valid contract exists between the Chronicle and Hanover, namely the Policy.

58.     The Chronicle has paid all premiums owed under the Policy and has fully performed all other obligations and conditions under the Policy, or it is excused from performing them because of Hanover's wrongful denial of coverage.

59.     An actual controversy exists between the Chronicle and Hanover regarding the parties' respective rights and duties under the Policy.  The Chronicle therefore asks this Court to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure that:

(1)     Hanover owes a duty to defend the Chronicle in The *Cassone* Lawsuit;

(2)     Hanover must pay the Chronicle's attorneys' fees and costs incurred in The *Cassone* Lawsuit as of the date of judgment, plus pre- and post-judgment interest as required by law;

(3)     Hanover must pay any additional attorneys' fees and costs the Chronicle incurs in The *Cassone* Lawsuit after judgment is entered; and

(4)     Hanover must indemnify the Chronicle, up to the limits of the Policy, for any settlement or judgment entered against it in The *Cassone* Lawsuit.

**B.     Breach of Contract.**

60.     Plaintiff incorporates all preceding allegations as if fully alleged herein.

61.     A valid contract exists between the Chronicle and Hanover, namely the Policy.

62.     The Chronicle has paid all premiums owed under the Policy and has fully performed all other obligations and conditions under the Policy, or it is excused from performing them because of Hanover's wrongful denial of coverage.

63.     Hanover has breached the contract by failing to provide the Chronicle a defense in The *Cassone* Lawsuit and by failing to pay its attorneys' fees and costs incurred in that lawsuit.

64.     Hanover has anticipatorily breached the contract by refusing to pay future defense costs in The *Cassone* Lawsuit and by refusing to honor its contractual obligation to indemnify the Chronicle for any settlement or judgment entered against it, up to the limits of the Policy.

65.     Hanover's breach of contract has proximately caused the Chronicle damages including, but not limited to, the attorneys' fees, costs, and expenses incurred in the defense of The *Cassone* Lawsuit.

66.     Hanover's breach of contract will continue to cause the Chronicle damages in the form of the additional attorneys' fees and costs it will incur in the defense of The *Cassone* Lawsuit in the future.

**C.     Violations of the Texas Insurance Code.**

67.     The Chronicle incorporates all preceding allegations as if fully alleged herein.

**1.     Unfair and deceptive practices and misrepresentation of the Policy.**

68.     Hanover owes the Chronicle duties under Sections 541.003, 541.060, and 541.061 of the Texas Insurance Code to refrain from engaging in any unfair or deceptive act or practice in the business of insurance and to refrain from misrepresenting its insurance policies.

69.     Hanover has engaged in unfair or deceptive practices in violation of Section 541.060 of the Texas Insurance Code by:

a.     misrepresenting to the Chronicle a material fact or policy provision relating to coverage under the Policy;

b.     failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which its liability has become clear;

c.     failing to promptly provide the Chronicle a reasonable explanation of the basis in the Policy for its denial of the Chronicle's claim; and

d.     refusing to pay the Chronicle's claim without conducting a reasonable investigation with respect to the claim.

70.     In addition, Hanover misrepresented the Policy in violation of Section 541.061 of the Texas Insurance Code by:

      a.     making an untrue statement of material fact;

      b.     failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

      c.     making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; and/or

      d.     making a material misstatement of law.

      **2.     Unfair claim settlement practices.**

71.     Hanover owes the Chronicle duties under Section 542.001, *et seq.*, of the Texas Insurance Code to refrain from unfair claim settlement practices.

72.     Hanover engaged in unfair settlement practices by, among other things,

      a.     knowingly misrepresenting to the Chronicle pertinent fact or policy provisions relating to coverage under the Policy;

      b.     failing to acknowledge with reasonable promptness pertinent communications relating to a claim arising under the Policy;

      c.     failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the Policy;

      d.     not attempting in good faith to effect a prompt, fair, and equitable settlement of the Chronicle's claim in which liability has become reasonably clear; and

      e.     compelling the Chronicle to institute a suit to recover an amount due under the Policy by offering substantially less than the amount ultimately recovered in this lawsuit.

**3.      Breach of the Texas Prompt Payment of Claims Act.**

73.      Hanover owes the Chronicle duties under Section 542.051, *et seq.*, of the Texas Insurance Code ("the Texas Prompt Payment of Claims Act" or "TPPCA") to pay claims no later than 60 days after receiving all items, statements, and forms reasonably requested of the insured.

74.      Hanover received all such information no later than November 16, 2023, when it issued a letter denying the Chronicle any coverage for The *Cassone* Lawsuit.  Hanover breached its obligation to pay the Chronicle's attorneys' fees and costs incurred in that lawsuit claims without unduly delay, in violation of Section 542.058 of the Texas Insurance Code.

**4.      Remedies for Hanover's breach of Texas Insurance Code.**

75.      The Chronicle is entitled to recover its actual damages, attorneys' fees, costs, and expenses incurred in defense of The Cassone Lawsuit pursuant to Sections 541.152(a) and 542.060 of the Texas Insurance Code.

76.      Before denying coverage, Hanover was fully aware of the language of The *Cassone* Lawsuit and the language of its Policy, and it is charged with knowledge of Texas insurance law. The Chronicle expressly put Hanover on notice that its rejection of coverage was erroneous. Hanover's breaches of the Texas Insurance Code were therefore committed knowingly, making the Chronicle entitled to an award of three times the amount of its actual damages under Section 541.152(b) of the Texas Insurance Code.

**D.      Breach of Implied Covenant of Good Faith and Fair Dealing.**

77.      The Chronicle incorporates all preceding allegations as if fully alleged herein.

78.      Hanover at all material times had the duty to act fairly and in good faith in carrying out its responsibilities under the Policy.

79.      Pursuant to the Policy and Texas law, Hanover must act fairly and in good faith to

promptly and reasonably investigate claims against the Chronicle, and to make reasonable coverage decisions.  As an insurer, Hanover owes the Chronicle an implied covenant of good faith and fair dealing.  Hanover breached these duties by refusing to defend the Chronicle in The *Cassone* Lawsuit and by refusing to provide necessary coverage owed under the Policy when tendered, notwithstanding the Chronicle's repeated requests.

80.     Hanover breached its duty of good faith and fair dealing by committing the following acts and omissions:

a.     Unreasonably refusing to immediately defend the Chronicle in The *Cassone* Lawsuit after receipt of tender thereof;

b.     Failing to conduct a reasonable investigation and unreasonably withholding monetary payment for the defense of The *Cassone* Lawsuit;

c.     Failing to give a reasonable interpretation to the provisions of the Policy, failing to reasonably apply provisions of the Policy to the claims asserted against the Chronicle, unreasonably refusing to acknowledge that the claims against the Chronicle in The *Cassone* Lawsuit are potentially covered, and failing to timely, promptly and without delay, pay the reasonable and necessary defense fees and costs incurred after the tender;

d.     Failing to provide the Chronicle with a reasonable or justifiable basis for its decision to deny coverage for The *Cassone* Lawsuit; and

e.     Interpreting the provisions of the Policy and the factual circumstances to resolve ambiguities and uncertainties against the Chronicle and in favor of itself.

81.     As a result of Hanover's bad faith conduct, the Chronicle has incurred substantial attorneys' fees, costs, and expenses in defense of the *Cassone* Lawsuit and has been required to bring this Complaint to enforce its rights under the Policy and Texas law.

82.     The Chronicle is entitled to recover as damages against Hanover all the attorneys'

fees, costs, and expenses it has incurred and will incur in the defense of The *Cassone* Lawsuit, in

addition to its attorneys' fees and costs incurred in this lawsuit under Section 542.060, Tex. Ins.

Code and Section 38.001, Tex. Civ. Prac. & Rem. Code, plus pre- and post-judgment interest,

including statutory 18% interest under Section 542.060, Tex. Ins. Code.

**VI.     Conditions precedent.**

83.     All conditions precedent have been performed or occurred.

**VII.    Prayer.**

WHEREFORE, PREMISES CONSIDERED, Plaintiff The Austin Chronicle Corporation

seeks judgment against Defendant Hanover Casualty Company:

1.     Declaring the parties' rights as requested in Section V.A., above;

2.     Awarding the Chronicle its attorneys' fees and costs incurred in The *Cassone*
       Lawsuit, actual damages, and treble damages under Section 541.152(b), Tex. Ins.
       Code;

3.     Awarding the Chronicle pre- and post-judgment interest; and

4.     Awarding the Chronicle its attorneys' fees and costs incurred in this lawsuit; and

5.     Such other and further relief deemed just and proper.

Respectfully submitted,

/s/ *Peter D. Kennedy*
Peter D. Kennedy
State Bar No. 11296650
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas 78701
(512) 480-5764
(512) 536-9908 (Fax)
pkennedy@gdhm.com

**ATTORNEYS FOR THE AUSTIN CHRONICLE
CORPORATION**

### EXHIBITS IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT

1.  Hanover Insurance Policy OLD-A997819-07 issued to The Austin Chronicle Corporation.

2.  Original Complaint, *Cassone v. Black*, No. 1:23-cv-01197, in the U.S. District Court for the Western District of Texas, Austin Division, filed October 3, 2023.

3.  First Amended Complaint, *Cassone v. Black*, No. 1:23-cv-01197, in the U.S. District Court for the Western District of Texas, Austin Division, filed December 8, 2023.

4.  Proposed Second Amended Complaint, *Cassone v. Black*, No. 1:23-cv-01197, in the U.S. District Court for the Western District of Texas, Austin Division, filed June 5, 2024.

5.  Hanover letter declining coverage for The *Cassone* Lawsuit under the Policy's Businessowners Coverage and the Umbrella Policy, dated November 16, 2023.

6.  Letter from the Chronicle's counsel responding to Hanover's letter declining coverage, dated November 19, 2023.

7.  Email from the Chronicle's counsel tendering the First Amended Complaint in The *Cassone* Lawsuit to Hanover, dated December 11, 2023.

8.  Hanover letter declining coverage for The *Cassone* Lawsuit under the Policy's Employment Practices Liability Endorsement, dated March 6, 2024.